# United States District Court
# District of Massachusetts

DEREK SINCERE BLACK WOLF CRYER,
      Plaintiff,

   v.                               CIVIL ACTION NO. 09-10238-PBS

HAROLD W. CLARKE, et al.,
      Defendants.

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE REMAINING CLAIMS (#137) AND DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT AND EXHIBITS SUBMITTED IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON REMAINING CLAIMS (#152)

COLLINGS, U.S.M.J.

### I. Introduction

The plaintiff, Derek Sincere Black Wolf Cryer, was until recently an inmate at the Souza-Baranowski Correctional Center ("SBCC"), a maximum

security facility in Shirley, Massachusetts.  On August 9, 2012, he was transferred to Old Colony Correctional Center ("OCCC").  (*See* #183 Notice of Plaintiff's Reclassification and Transfer)  In this prisoner civil rights suit, Cryer asserts that prison officials[1] have unlawfully prevented him from practicing his Native American religion by, among other things, denying him access to certain religious items and ceremonies.  He asserts violations of his rights under, *inter alia*, the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), the federal constitution, and Massachusetts state law.  Previously, the district court granted summary judgment in part in favor of the defendants on certain aspects of the plaintiff's federal claims and on several state-law claims.  *See Cryer v. Massachusetts Dep't of Correction*, 763 F. Supp.2d 237 (D. Mass. 2011).  Several claims remained, and the defendants presently move for summary judgment on those claims.

On September 26, 2011, defendants filed Defendants' Motion for Summary Judgment on the Remaining Claims (#137).  On October 17, 2011, the court granted the defendants leave to file a memorandum in excess of

---

[1]

The defendants in this case are: the Massachusetts Department of Correction ("DOC"); Harold W. Clarke, former Commissioner of Correction; Veronica Madden, Deputy Commissioner; Timothy Hall, former DOC Assistant Deputy Commissioner; Luis L. Spencer, former Assistant Deputy Commissioner and currently the Commissioner of the DOC, and Christopher Mitchell, DOC Director of Program Services.

twenty pages, and on even date, the defendants filed their Memorandum of Law in Support of Defendants' Motion for Summary Judgment on the Remaining Claims (#141), containing a Statement of Undisputed Facts and exhibits. On October 31, 2011, the plaintiff filed a handwritten copy of his Opposition [to] Motion for Summary Judgment and Request for Oral Argument (#146) with a handwritten affidavit and exhibits attached. On November 9, 2011, the plaintiff filed a typed copy of his Opposition [to] Motion [to] [sic] Summary Judgement and Request for Oral Argument and a typed copy of his Affidavit of Derek Sincere Black Wolf Cryer (#150-1).

On November 10, 2011, the defendants filed their Memorandum in Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment on Remaining Claims (#151), with exhibit. In addition, the defendants filed Defendants' Motion to Strike Plaintiff's Affidavit and Exhibits Submitted in Support of Opposition to Defendants' Motion for Summary Judgment on Remaining Claims (#152). With leave granted, on November 18, 2011, the plaintiff filed his Reply/Opposition to Defendants [sic] Motion to Strike Plaintiff's Affidavit and Exhibits (#154), and on November 21, 2011, the plaintiff filed his Reply/Opposition to Defendants [sic] Memorandum in Reply to Plaintiff's Opposition to Defendants [sic] Motion for Summary Judgement

on Remaining Claims (#157).  The motions have thus been fully briefed and

are poised for resolution.[2]

## II. Background

The Court has previously laid out background and the governing law in

its Report and Recommendation on Cryer's motion for a preliminary injunction.

*See Cryer v. Clark*, No. 09-10238-PBS, 2009 WL 6345768 (D. Mass. July 9,

2009), *report and recommendation adopted*, 2009 WL 6345769 (D. Mass. July

31, 2009).  The Court presumes familiarity with its contents.  Otherwise, unless

specifically noted, the following facts are undisputed.[3]

Cryer was until recently an inmate at SBCC.  In 2009, SBCC became the

Massachusetts DOC's only maximum security prison.  As a result, SBCC's

population has increased.  (#141 at 7 ¶ 17)  In addition, the climate of the

---

[2]

On December 15, 2011, Judge Saris referred the Motion for Summary Judgment on Remaining Claims (#137) and the Defendants' Motion to Strike Plaintiff's Affidavit and Exhibits Submitted in Support of Opposition to Defendants' Motion for Summary Judgment on Remaining Claims (#152), to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636.

[3]

Local Rule 56.1 requires a party opposing a motion for summary judgment to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."  In opposition to the defendants' motion for summary judgment, Cryer simply lists the numbered paragraphs in the defendants' statement of undisputed facts with which he disagrees.  Given the plaintiff's *pro se* status, the Court overlooks the plaintiff's failure to adhere to the rule's dictates, and the undisputed facts are drawn from the paragraphs that Cryer has not disputed.  Still, in order to defeat a motion for summary judgment under the Fed. R. Civ. P. 56, Cryer must point to trial worthy evidence to establish a genuine issue of material fact, and the Court assays Cryer's responsive filings under the usual standard.

prison has changed, and SBCC has experienced an increase of violence between inmates.  (*Id.*)  During the summer of 2011, SBCC experienced a number of lockdowns in response to inmate violence.  (*Id.*)

Cryer is a member of the Native American spiritual group at SBCC, also known as a circle.  (#141 at 3 ¶ 3)  All the religious groups at SBCC, with the exception of the Muslim and Nation of Islam inmates, use SBCC's chapel for meetings.  (#141 at 5 ¶ 11) The Muslim inmates meet in a separate area known as a mosque, and the Nation of Islam inmates meet weekly in a classroom.  (*Id.*)   A multi-purpose room which had previously been used by the Nation of Islam has now been converted to a Residential Treatment Unit and is no longer available to the religious group.  (*Id.*)

The DOC has issued a Religious Services Handbook ("the Handbook") to serve as a "tool and reference source for prison administrators and inmates." *Rasheed v. Commissioner of Correction*, 446 Mass. 463, 475-477, 845 N.E.2d 296, 308-309 (2006) (upholding Handbook as valid exercise of regulatory and statutory authority).  The Handbook contains, among other things, a list of approved practices and religious items for each of the recognized religions within the DOC.  Recently, the DOC approved Silver Hawk as its vendor for all approved Native American items.  (#141 at 4 ¶ 7)  Silver Hawk is a Native

American owned company located in Massachusetts, which creates and sells Native American spiritual items. The DOC purchases kinnick-kinnick from Silver Hawk, and Native American inmates can purchase various religious items from Silver Hawk. (*Id.*)

Otherwise, according to the defendants, the plaintiff has access to certain items during corporate ceremonies (#141 at 4 ¶ 5), and the Handbook also allows Native American inmates to possess various religious items for personal possession, including a black, white or red headband, a three-row choker, a medicine bag, prayer beads, sacred path cards, healing stones, a quilled wheel, and a small one-piece pipe for personal use during the pipe ceremonies. (*Id.*)

Previously, the Native American circle was scheduled to meet weekly on Monday mornings from 9:00 a.m. to 11:00 a.m. in the chapel; a Native American volunteer was present to lead the corporate worship. (#141 at 5 ¶ 10) And, on the first Monday of each month, the circle, led by the Native American volunteer, would meet in a fenced area within the prison's South yard. (#141 at 6 ¶ 12) According to the defendants, the South yard is closed to other inmates during the monthly outdoor smudging and pipe ceremonies in order to prevent disruption of the ceremonies and to protect the Native American inmates and volunteer from other inmates. (*Id.*) During the

smudging and pipe ceremonies, the inmates are permitted to smoke kinnick-kinnick with tobacco using a two-piece pipe.[4]  (*Id.*)  According to the defendants, inmates are not permitted to conduct smudging and pipe ceremonies inside the chapel because smoke would enter into other areas of the prison through the ventilation system.  (#141 at 5 ¶ 10) Further, in response to this Court's order dated April 9, 2012, the defendants represent that recently the DOC has permanently barred the Native American volunteer on account of a purported violation of prison policy.  (#165 ¶ 3)  As a result, SBCC has "temporarily halted the weekly Native American circles."  (#141 at 6 ¶¶ 13-14)  The DOC further represents that its efforts to replace the Native American volunteer have been unsuccessful thus far, but that it continues to work with the Native American community to find Native American volunteers to work at SBCC.  (#165-2, Second Aff. of William Milhomme ¶ 3)  In the meantime, the outdoor smudging and pipe ceremonies commenced with staff supervision on May 7, 2012, and, according to the defendants, Cryer and six other inmates participated in this ceremony.  (#167-1, Aff. of Lynn Chernesky

---

[4]
    At the start of this litigation, the DOC, pursuant to its policy prohibiting smoking, permitted only the use of kinnick-kinnick without tobacco during the pipe ceremony.  Since then, the DOC has amended its policies to permit the use of kinnick-kinnick with tobacco.  (*See* #141-3, Second Aff. of Christopher Mitchell ¶¶ 5-7)

¶ 4) The defendants further represent that the pipe and smudging ceremonies will continue monthly with staff supervision, but that the DOC lacks sufficient staff to supervise the weekly indoor Native American ceremonies.  (#165-1, Third Aff. of Anthony Mendonsa ¶ 7)  According to the defendants, safety and security concerns dictate that no inmate group can meet "without staff or volunteer supervision."  (#165-1, Third Aff. of Anthony Mendonsa ¶ 9)

### III. Discussion

### A.  Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1 Cir., 2005) (internal quotations marks and citation omitted).  When considering a motion for summary judgment, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support [ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top–Flite Golf Co.*, 335 F.3d 15, 19 (1 Cir.,

2003) (citations omitted); *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 5 (1 Cir., 2010).

> Once the moving party alleges the absence of all meaningful factual disputes, the non-moving party must show that a genuine issue of material fact exists. This showing requires more than the frenzied brandishing of a cardboard sword. The non-moving party must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment.

*Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 65 (1 Cir., 2012) (internal citations and quotation marks omitted); *Fontánez–Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54–55 (1 Cir., 2006). In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1 Cir., 2006); *Guay v. Burack*, 677 F.3d 10, 13 (1 Cir., 2012). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'Where the record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (further internal quotation marks omitted).

## B.  Overview of Claims

In his Complaint (#1), brought pursuant to 42 U.S.C. § 1983, Cryer asserted claims under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), and the federal constitution (the First Amendment, the Eighth Amendment, and the Equal Protection Clause of the Fourteenth Amendment).  He also asserted several state law claims based on Massachusetts constitutional, statutory and regulatory law. Cryer complains that prison officials have abridged his right to practice his Native American religion in the following ways: 1) by denying him access to a daily smudging ceremony[3] (#1 ¶ 28); 2) by preventing him from acquiring certain "spiritual regalia," to wit, a personal two-piece prayer pipe; a four-row choker or "spiritual necklace," and a multi-colored animal spiritual headband

---

[3]
According to the complaint, "smudging" is a "cleansing process" that entails burning herbs (sweetgrass, cedar and sage).  (#1, Exh. 1 at 1 ¶ A)

(#1 ¶¶ 30, 33, 34); 3) by failing to ensure that these items are "authenticated," *i.e.*, provided by Native American communities (#1 ¶ 29, Exh. 1 ¶ B); 4) by denying him daily access to the "outside worship area" (#1 ¶ 35); 5) by failing to provide a separate indoor room dedicated to Native American religious practice (#1 ¶ 36); and 6) by failing to provide access to a monthly sweat lodge ceremony (#1 ¶ 37). He also complains that the defendants lack a contracted Native American Spiritual Leader to serve on the Religious Service Review Committee ("RSRC"), and that the defendants have restricted particular individuals from becoming "volunteer spiritual leaders" within the DOC, and indeed have banned these individuals from entering DOC prisons. (#1 ¶¶ 21, 23-27)

Previously, the district court granted summary judgment in favor of the defendants on Cryer's claim that denying him access to ceremonial tobacco on a daily basis violated his right to practice his Native American religion under RLUIPA, the federal constitution and Massachusetts constitutional, statutory and regulatory law. *See Cryer v. Massachusetts Dep't of Correction*, 763 F. Supp.2d 237 (D. Mass. 2011). The court denied summary judgment, however, on the question of whether the DOC's policy prohibiting ceremonial tobacco use during the once-monthly smudging and pipe ceremony infringed Cryer's

rights.  Since that denial, the DOC purports to have adopted a policy that permits Native Americans to use kinnick-kinnick containing ceremonial tobacco during the once-monthly ceremony.  The Court takes up the ramifications of this change in policy in the discussion section below.

## C. Preliminary Considerations

### *1. Mootness*

"The Constitution 'confines the jurisdiction of the federal courts to actual cases and controversies.'"  *Barr v. Galvin*, 626 F.3d 99, 104 (1 Cir., 2010) (quoting *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 88 (1 Cir., 2008)), *cert. denied*, 132 S. Ct. 368 (2011).  "This requirement must be satisfied at each and every stage of the litigation." *Cruz v. Farquharson*, 252 F.3d 530, 533 (1 Cir., 2001).  Accordingly, "[w]hen a case is moot—that is, when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome—a case or controversy ceases to exist, and dismissal of the action is compulsory." *Id.*  Though the defendants have not argued mootness, the doctrine implicates the Court's subject matter jurisdiction, and so the Court is obliged to consider whether certain intervening events have rendered some of Cryer's claims moot.  *See ConnectU LLC*, 522 F.3d at 88

(sound practice dictates considering mootness at the threshold.)

On August 17, 2012, the defendants filed a Notice of Plaintiff's Reclassification and Transfer (#183), in which they represented that Cryer has been reclassified and transferred from SBCC to OCCC, a medium-security facility. The defendants do not contend that this reclassification and transfer has mooted Cryer's claims. In anticipation of such an argument, Cryer has filed "Plaintiff's Notice of Retaliatory Transfer." (#185) In this submission, Cryer contends that the defendants have transferred him in an effort to render his claims moot.

The Court concludes that the transfer has not mooted Cryer's claims. Cryer has asserted claims against the policy-making officials of the DOC, and those claims have not been mooted by Cryer's transfer within the system. *See Ford v. Clarke*, 746 F. Supp.2d 273, 286 (D. Mass., 2010) (inmate's claim not moot where evidence suggests a reasonable likelihood that inmate will be subject to DDU confinement in the future); *Shaheed-Muhammad v. Dipaolo*, 138 F. Supp.2d 99, 106 (D. Mass., 2001) (noting that Muslim inmate's transfer out of the jurisdiction of the Massachusetts DOC to another state's system renders request for injunctive relief against the Massachusetts DOC moot where there is no evidence suggesting inmate's likely return to Massachusetts).

In addition, a "recognized, albeit narrow, exception to general principles of mootness . . . [may] pertain[] . . . if there is some demonstrated probability that the same controversy, involving the same parties, will reoccur." *Cruz,* 252 F.3d at 534. The present record does not indicate that Cryer's transfer to OCCC is anything but temporary. Furthermore, DOC regulations require reclassification "at least annually." 103 CMR 420.09. Because Cryer is serving a life sentence, it seems reasonably probable that he will return to SBCC, the DOC's only maximum security prison. (*See also* #145, Defendants' Opposition to Plaintiff's Motion to Enjoin) Thus, the Court concludes that Cryer's claims are not moot by dint of his transfer.

Otherwise, during the course of the litigation, the defendants have changed certain of their policies affecting Cryer's claims. According to the defendants, the Religious Services Review Committee ("RSRC"), which is comprised of senior DOC officials, met on November 16, 2010 "to consider amending its Handbook to permit inmates to have access to kinnick-kinnick containing tobacco for Native American spiritual ceremonies that take place outdoors, such as the pipe and purification lodge ceremonies." (#141-3 Second Aff. of Christopher Mitchell ¶ 6) And on November 30, 2010, the Acting Commissioner of Correction "approved the RSRC recommendation to

amend the Religious Services Handbook to permit inmates to use kinnick-kinnick containing tobacco for approved outdoor Native American . . . ceremonies." (*Id.* ¶ 7) Thus, the defendants represent that "[i]t is now DOC policy to permit inmates to have access to kinnick-kinnick containing tobacco for approved outdoor Native American purification lodge and pipe ceremonies." (*Id.*)

"It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 (1982)). "If it did, the courts would be compelled to leave the defendant . . . free to return to his old ways." *Friends of the Earth, Inc.*, 528 U.S. at 189 (internal quotations marks, alterations and citations omitted). Thus,

> a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur. Importantly, a statement by Defendants that the challenged conduct will not recur, standing alone, cannot suffice to satisfy this heavy burden of persuasion. And, certainly, where a defendant is

> unwilling to give any assurance that the conduct will
> not be repeated, a natural suspicion is provoked that
> recurrence may well be a realistic possibility.

*Adams v. Federal Bureau of Prisons*, 716 F. Supp.2d 107, 111-112 (D. Mass., 2010) (internal quotation marks, alteration, citations and footnotes omitted). The Court concludes that the defendants' averments that they have adopted a DOC-wide policy is sufficient to meet even this heavy burden. Nothing in the record suggests that defendants have any intention of reinstituting the challenged practice. *Cf. City of Mesquite*, 455 U.S. at 289 & n.11 (claim not moot where city announced its intention to reenact challenged provision); *Adams*, 716 F. Supp.2d at 111-112 (Bureau of Prison's voluntary decision to provide inmate with hormones not rendered moot where "Defendants have not disavowed the policy they relied on for four years in support of their claim that Plaintiff was ineligible for hormone therapy."). Cryer raises additional arguments concerning his claim requesting access to ceremonial tobacco, which the Court considers *infra* in light of this new policy.

Similarly, the defendants represent that "the [RSRC] decision to approve Silver Hawk, a Native American owned company located in Massachusetts, as . . . the DOC's supplier of all approved Native American items for corporate and individual use was approved by the acting Commissioner on June 28, 2011."

(#141-3, Second Aff. of Christopher Mitchell ¶ 8) Further, "[t]he RSRC has also approved the sale of four-tier chokers in addition to three-tier chokers previously available through Silver Hawk." *Id.* In the Court's view, the defendants' assurances that they have implemented a department-wide policy satisfies their burden to show that the conduct will not be repeated. The Court considers Cryer's claims in light of these policy changes.

Finally, Cryer has asserted claims for damages, and those claims are not mooted by Cryer's transfer. *See Kuperman v. Wrenn*, 645 F.3d 69, 73 (1 Cir., 2011) (claims for nominal and punitive damages alleging a constitutional violation that occurred during former inmate's incarceration not mooted by release).

### 2. Motion to Strike (#154)

The defendants have moved to strike Cryer's affidavit (#150-1) on the grounds that it fails to meet the requirements of Fed. R. Civ. P. 56(c)(4), which requires that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The Court agrees that much of the affidavit fails to meet the requirements of Rule 56: the affidavit for the most part simply lists what

17

Cryer characterizes as "lies" contained in the defendants' supporting affidavits; that is, Cryer essentially points to inconsistencies within individual defendant's affidavits. But an inconsistency does not necessarily create a genuine dispute of fact. The Court declines to strike the affidavit in its entirety, but will consider only those portions that meet the requirements of Rule 56.

For similar reasons, the Court shall recommend denying the defendants' motion to strike certain exhibits attached to the affidavit, to wit, exhibits A, M, O and T. However, the Court will consider them only to the extent that they have the possibility of creating a genuine dispute of material fact and satisfy the dictates of Rule 56.

### D. Federal Claims

#### 1. *Immunity Questions*

Cryer alleges violations of his federal constitutional and statutory rights pursuant to 42 U.S.C. § 1983. "[I]t is well settled that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." *Fantini v. Salem State Coll.*, 557 F.3d 22, 33 (1 Cir., 2009) (internal quotation marks and citation omitted). Such a suit is foreclosed by *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Accordingly, the claims for damages asserted against defendants in their

official capacities should be dismissed. In addition, the DOC, as an arm of the state, enjoys Eleventh Amendment immunity from suit in federal court. *See O'Neill v. Baker*, 210 F.3d 41, 47 & n.5 (1 Cir., 2000) ("The Supreme Court has clearly said that the Eleventh Amendment bars federal suits by citizens against the state or state agencies and that this 'jurisdictional bar applies regardless of the nature of the relief sought.'") (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Massachusetts has not consented to suit or waived its Eleventh Amendment immunity here. *See Coggeshall v. Massachusetts Bd. of Registration of Psychologists*, 604 F.3d 658, 662 (1 Cir., 2010). Thus, Cryer's claims for injunctive relief against the DOC must be dismissed. In addition, the Supreme Court has recently decided that the states have not waived their sovereign immunity from claims for monetary relief under RLUIPA. *See Sossamon v. Texas*, 131 S. Ct. 1651, 1655 (2011). Thus, injunctive relief in this action is limited to claims against DOC officials acting in their official capacities. *See O'Neill*, 210 F.3d at 47. To the extent that Cryer asserts monetary claims against the state officials in their individual capacities, the defendants have moved for summary judgment on the grounds of qualified immunity, which the Court addresses below.

## 2. Claims under RLUIPA

"RLUIPA provides greater protection to inmates' free-exercise rights than does the First Amendment." *Kuperman*, 645 F.3d at 79. Thus, the Court considers these claims first because if the claims fail under RLUIPA, then they necessarily fail under the First Amendment.

The Court has previously set out RLUIPA's burden-shifting framework, *see Cryer*, 2009 WL 6345768, at **2-3, and it is unnecessary to repeat it here. The Court considers Cryer's claims under the summary judgment standard and this framework.

### a. Access to daily smudging

Cryer alleges that prison officials have abridged his rights under RLUIPA by denying him access to a daily smudging ceremony. Although prison policy currently permits him to participate in a monthly smudging ceremony,[4] he

---

[4] Cryer does not dispute that current policy permits him to smudge once monthly during the outside smudging and pipe ceremony. Cryer appears to dispute that Native Americans are *actually* permitted to smudge once a month. (*See* #150, Exh. 1, Aff. Of Derek Sincere Black Wolf Cryer, at 2 ¶ 7) He avers that they do not meet "<u>each month</u>" and that, in fact, they have met only twice during the period from January 1, 2011 to October 27, 2011.

The defendants acknowledge, in response to this Court's Order dated April 9, 2012, that they were forced to suspend outdoor ceremonies when the Native American volunteer was alleged to have infringed certain DOC policies. The defendants have submitted unrebutted affidavits to establish that outdoor Native American ceremonies resumed as of May 7, 2012 under staff supervision, and that Cryer attended. (*See* #165-1 ¶ 7, Third Aff. of Anthony Mendonsa ¶ 9; #167-1, Aff. of Lynn Chernesky ¶¶ 4-5) The record indicates that the suspension of services is staffing-related and does not represent a change in DOC policy: the defendants have submitted affidavits that they continue to make efforts to locate a Native American volunteer. To the extent that Cryer challenges the defendants' efforts to find a volunteer or contends that the volunteer policy burdens his practice of religion, that claim is not squarely raised in the complaint; Cryer appears to have raised

complains that he ought to be able to smudge daily.

The Court assumes that "smudging" constitutes a "religious exercise." *See Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) ("[T]he exercise of religion often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine . . . .") (internal quotation marks and citation omitted) (alterations in original). In his opposition to the defendants' motion for summary judgment, Cryer makes no developed effort to establish that the policy limiting him to a once-monthly smudging ceremony substantially burdens his practice of his Native American religion.[5] Previously, in denying Cryer's motion for preliminary injunction, the Court noted:

> [T]he plaintiff does not explain how limiting him to monthly smudging substantially burdens the practice of his religion; he does not explain how his inability to smudge daily forces him to modify his religious behavior or to violate his religious beliefs. *Cf. Farrow v. Stanley*, 2005 WL 2671541, **5-6 (D.N.H. Oct. 20,

---

a related claim in another lawsuit pending before the district court and that claim can be addressed there. (*See Cryer v. Spencer*, No. 11-cv-11953-PBS)

[5]

The First Circuit has assumed, without deciding, that a substantial burden may be shown in cases where the government "puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Hudson v. Dennehy*, 538 F. Supp.2d 400, 409 (D. Mass., 2008) (quoting *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981), and citing *Spratt v. Rhode Island Dep't of Corrs.*, 482 F.3d 33, 38 (1 Cir., 2007)) (footnote omitted).

> 2005) (concluding, on the merits, that inmate had failed to explain why daily group prayer was necessary, or why DOC policy limiting him to weekly group prayer substantially burdened his religious exercise).

*Cryer*, 2009 WL 6345768, at *4.  Now that discovery is complete, the Court concludes that Cryer has not remedied this deficiency.  Again, although Cryer has defined the practice of smudging in his various filings (*see, e.g.*, #1, Exh. 1 at 2), he does not explain how his inability to smudge daily coerces him into modifying his behavior or violating his beliefs.  Instead, in response to the defendants' motion for summary judgment, Cryer jumps immediately to an argument that the prison's policy limiting him to a once monthly ceremony fails to satisfy the "least restrictive means" test.  (*See* #150 at 5)  Cryer surmises that prison officials *could* accommodate his practice of daily smudging (by, for example, allowing him "Morning, Afternoon, and Evening access to the Unit Outdoor Recreational Decks (RD) for 15 to 30 minutes before any regular or general movements are made" with guard supervision, or by permitting him to smudge during the weekly indoor religious services).  On the present record, however, the Court need not reach those considerations because Cryer has failed to put forth evidence to show that limiting his access to a once-monthly smudging ceremony substantially burdens the practice of his religion.   *See*

*Perez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1 Cir., 2001) (in evaluating a motion for summary judgment, "an absence of evidence on a critical issue weighs against the party--be it the movant or the nonmovant--who would bear the burden of proof on that issue at trial"); *see also Kuperman*, 645 F.3d at 74 ("On issues for which [non-moving inmate] would bear the burden of proof at trial, he had to introduce definite, competent evidence to survive summary judgment.").

This is not a case in which prison officials have banned the practice outright. And, in any event, the Handbook provides that "[a]llocation of time and space [for corporate worship] should be based on reasonable accommodation and availability or resources." (#141-1 at 1) DOC officials maintain that permitting Cryer to smudge on a daily basis is not possible because of staffing and space constraints. The Court will not second-guess the institutional determination that the DOC lacks the resources to supervise more frequent smudging ceremonies. *Cf. Skenandore v. Endicott*, No. 05-C-0234, 2006 WL 2587545, at **17-18 (E.D. Wis. Sept. 6, 2006) (inmate's rights under RLUIPA not impinged by denying inmate's request to participate in weekly pipe ceremony where prison cited limited resources to oversee ceremony); *see also Cutter*, 544 U.S. at 723 (courts should "apply the Act's standard with due

deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, *consistent with consideration of costs and limited resources*") (internal quotation marks and citation omitted) (emphasis added).

For all these reasons, the Court recommends summary judgment in favor of the defendants on this claim.

<u>b. Access to Native American ceremonial items</u>

The Handbook permits Native American practitioners to possess a number of religious items, including:  solid color headbands (red, white or black), prayer beads, one prayer feather for in-cell worship, a medicine bag, a "quilled wheel," and sacred path cards.  (*See* #141-1 at 1) The Handbook provides that Native American inmates can purchase a personal one-piece prayer pipe for use during corporate ceremonies, and the Handbook permits the use of several other items during corporate ceremonies, which are otherwise maintained in institutional storage.  (*See* #141-1 at 1-2)

In his complaint, Cryer complains that the defendants' refusal to permit him to possess a two-piece prayer pipe for personal use during corporate

ceremonies, ceremonial tobacco,[6] a four-tier choker, and a multi-colored animal spiritual headband abridges his right to practice his religion. (#1 ¶¶ 11, 12, 14, 15)  In addition, he alleges that DOC policy prohibited him from purchasing "authenticated spiritual regalia and items from native communities." (#1 ¶ 10)

At the start of the litigation, the DOC permitted purchase of Native American religious items from a vendor called Keefe Group.  Since then, the DOC has approved a company called "Silver Hawk" as its vendor for all approved Native American religious items.  (#141 ¶ 7)  According to the defendants, "Silver Hawk is a Native American owned company located in Massachusetts which creates and sells handmade Native American spiritual items." (*Id.*)  In addition, at the outset of litigation, the Handbook permitted Native Americans to possess a three-tier animal tooth necklace and a one-piece prayer pipe, but the DOC represents that it has revised its policy to permit Native American inmates to purchase a four-tier choker and a two-piece prayer pipe through Silver Hawk.  (#141 ¶ 7; #151-1, Third Aff. of Christopher Mitchell ¶ 3)

---

[6]

The Court addresses the claim pertaining to ceremonial tobacco, *infra*.

Cryer does not dispute that he is now able to purchase these religious items from Silver Hawk.  Nor does he dispute that Silver Hawk creates authentic Native American spiritual items.  Rather, he chiefly complains that DOC officials have exaggerated the security concerns that underlie the policy for limiting inmate access to a given set of religious items.  (*See, e.g.*, #150 at 7, 9)  However, the burden does not shift to DOC officials to establish a compelling interest until Cryer has met his prima facie burden.  Prison officials have not banned outright the possession of Native American spiritual artifacts, and Cryer has not explained how using the presently available alternatives (the red, white or blue headbands, for example) forces him to modify his religious beliefs.  Because Cryer has failed to adduce evidence to satisfy his burden, the Court recommends that summary judgment enter in favor of the defendants on these claims.

c. Daily access to outside worship area and
access to a dedicated Native American indoor worship area

The Native American circle has traditionally met weekly on Monday mornings in the prison's chapel.  (#141 ¶ 10)  Cryer complains that restricting group meetings to the chapel (as opposed to a dedicated indoor room or to the outside worship area), infringes his rights under RLUIPA.  Previously, this

Court noted that "Cryer has not explained why requiring him to meet for group worship in the chapel rather than a separate room dedicated to Native American use substantially burdens his religious practice." *Cryer*, 2009 WL 6345768, at *9. Again, Cryer has not remedied this failing. In his opposition to the defendants' motion for summary judgment, Cryer states in conclusory fashion that a separate indoor Native Room "is absolutely essential and necessary in this case to conduct and to have enough time for study, worship, and council activity, etc." (#150 at 10), and that the "unavailability of space . . . creates a substantial burden," (*id.*) He cites to no trial worthy evidence to support this conclusory statement.[7] Otherwise, he points to other "ready alternative[s]" that could accommodate his request under the least restrictive means test.

Again, Cryer has not made a prima facie showing that defendants' refusal to provide him with a separate indoor room for Native American worship coerces him into modifying his religious behavior. For that reason, the Court recommends summary judgment on this claim.

d. Access to sweat lodge ceremony

---

[7]  Cryer has produced as an exhibit a document (#146-16, Exh. O), which appears to contain a list of "Religious Issues" identified by Chief Paul Pouliot. Bypassing the fact that this document is unauthenticated, the document makes no mention of an indoor Native American room.

Cryer contends that prison officials' unwillingness to grant him access to a monthly sweat lodge ceremony substantially burdens his right to practice his Native American religion. The Court assumes that Cryer has established that prohibiting his access to sweat lodge ceremonies substantially burdens his religious exercise. *Cf. Starr v. Cox,* 05–cv–368-JD, 2008 WL 1914286, at *10 (D.N.H. Apr. 28, 2008) ("Courts 'have little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise.'") (quoting *Greene v. Solano County Jail*, 513 F.3d 982, 988 (9 Cir., 2008))*; see also Farrow v. Wrenn*, 10-cv-058-PB, 2010 WL 2407136, at *6 (D.N.H. June 9, 2010) ("A prison policy that completely prevents an individual from engaging in one type of religious exercise, upon threat of punishment, imposes a substantial burden on that individual's exercise of religion."), *report and recommendation adopted*, 2010 WL 2793741 (D.N.H. July 14, 2010).

Nevertheless, the Court concludes that defendants have established that prohibiting monthly access to a sweat lodge serves the compelling interest of maintaining security and safety, and that they have further established that an outright ban on access to sweat lodge ceremonies is the least restrictive means of achieving that interest.

First, the Court notes that SBCC is the DOC's only maximum security prison. In addition, to meet their burden of establishing that they have considered the least restrictive alternatives, the defendants have produced evidence to establish the following: in 2004, SBCC constructed a sweat lodge within the small fenced area of the South yard, but encountered several difficulties. (#141-1 ¶ 11) First, because the sweat lodge requires a fire pit with a wood fire to heat the rocks used during the ceremony, prison officials became concerned about the air quality within the prison. Officials hired a private environmental and occupational health and safety company, OHI, to evaluate the problem. In its December 2, 2004 report, the company stated that smoke from the fire would invariably be drawn into the prison's ventilation system, and it noted complaints from the building occupants "ranging from irritation to exacerbation of asthma and breathing problems." (*Id.* ¶ 12) Officials considered relocating the fire pit, but several test fires at other locations continued to produce the same problem. (*Id.*) Officials considered, but rejected, using propane, natural gas or electric heat to heat the rocks, but concluded those alternatives were impractical or too dangerous. (*Id.*) Likewise, officials considered locating the fire pit outside the prison perimeter, "but determined that this was not feasible because it would be very dangerous

for staff to attempt to transport the extremely hot rocks into the prison, and the inmates would not be able to leave the prison to 'tend' the fire." (Id.)

Finally, prison officials rejected the possibility of transporting Cryer to MCI-Shirley to participate in the purification ceremony located there. (*Id.*) They note that DOC procedures do not permit maximum security inmates, like Cryer, to be housed temporarily in medium-security facilities. Further, they note that transporting Cryer would require "significant staffing and vehicle resources," would increase opportunities for escape, and would put the transported inmates at risk of assault at the other prison. (*Id.*)

In rejoinder, Cryer argues that the OHI report identified several possible solutions to the smoke entrapment issues: move the wood fire to a different location away from air intakes (the court notes that the report itself noted that this solution was not possible, absent moving the sweat lodge to another facility, *see* #146-10 at 3); allow the wood fires to be built on days when the wind direction was out of the north-northwest (the report itself noted that "[a]dmittedly this would be difficult to predict more than one day in advance," *id.*; or use propane, natural gas or electric heat (prison officials maintain that they considered these alternatives but determined that they were too impractical or dangerous).

The First Circuit "do[es] not construe RLUIPA to require prison administrators to refute every conceivable option in order to satisfy the least restrictive means prong." *Spratt v. Rhode Island Dep't of Corrs.*, 482 F.3d 33, 41 n.11 (1 Cir., 2007) (internal quotation marks and citation omitted); *accord Fowler v. Crawford*, 534 F.3d 931, 940 (8 Cir., 2008), *cert. denied*, 129 S. Ct. 1585 (2009). Rather, "to meet the least restrictive means test, prison administrators generally ought to explore at least some alternatives, and their rejection should generally be accompanied by some measure of explanation." *Spratt*, 482 F.3d at 41. Based on this record, the Court recommends that summary judgment enter in favor of the defendants on this claim, inasmuch as the prison officials have articulated both a compelling interest-security and safety-for the total ban on the sweat lodge, and have further shown that they have actually considered and rejected less restrictive measures. *Cf. Fowler,* 534 F.3d at 942 (concluding that prison officials, as a matter of law, had met their burden to establish that prohibiting a sweat lodge was the least restrictive means of achieving compelling interest in safety and security).[8] Finally, SBCC

---

[8] The Court finds persuasive the reasoning set forth in *Blake v. Howland*, No. 20050497C, 2009 WL 5698078, at **8-9 (Mass. Super. Dec. 2, 2009) (rejecting inmate's RLUIPA claim seeking access to a sweat lodge: "Defendants are warranted in their concern that providing ready access to fire, hot rocks, and an enclosed area inaccessible to outside view would compromise the safety and security of the Treatment Center.").

is unique in its status as the only maximum security facility in the system and the Court must defer to prison officials in view of these obvious security concerns.

### e. Access to ceremonial tobacco

Previously, the district court granted summary judgment in favor of the defendants on Cryer's claim that he needed daily access to ceremonial tobacco in order to practice his religion. The court denied summary judgment on Cryer's more limited claim for access to ceremonial tobacco during the once-monthly pipe ceremony. Since then, the DOC has ended its ban on access to ceremonial tobacco during the once-monthly ceremony; it now permits Native American inmates to have access to kinnick-kinnick containing tobacco during the monthly pipe ceremony. (*See* #141-2, Second Aff. of Anthony Mendonsa ¶ 5; 141-3, Second Aff. Of Christopher Mitchell ¶¶ 6-7) Thus, the defendants now aver that "[i]t is now DOC policy to permit inmates to have access to kinnick-kinnick containing tobacco for approved outdoor Native American purification lodge and pipe ceremonies." (#141-3 ¶ 7)

Cryer does not dispute this change in policy in his response. Instead, he contends that he should be permitted to use "pure natural ceremonial tobacco" during the pipe ceremony. (#150 at 8) However, Cryer has not made a prima

facie showing that limiting him to access to kinnick-kinnick containing tobacco during the monthly pipe ceremonies substantially burdens his religious exercise. *Cf. Farrow*, 2005 WL 2671541, at *5 ("[B]ecause defendants permit the use of kinniknick with traces of tobacco, they do not force Farrow to violate his religious beliefs or to depart significantly from his religious traditions."). For that reason, the Court recommends granting summary judgment in favor of the defendants on this claim.

### f. "Contracted Native American Spiritual Advisor"

Cryer complains that the defendants lack a "contracted Native American Spiritual Advisor" to serve on the RSRC. The record makes plain that the RSRC is comprised of senior DOC officials. As the First Circuit has observed, RLUIPA concerns itself with government restrictions on religious exercise. *See Bader v. Wrenn*, 675 F.3d 95, 99 (1 Cir., 2012). Cryer has not identified the "religious exercise" at issue here, and so this claim fails at the threshold. The Court does not read RLUIPA to allow a challenge to the composition of a prison's policy-making body.

Cryer also complains that the defendants have restricted certain individuals from becoming volunteers or clergy at SBCC. (#1 ¶¶ 23-27) Cryer in his filings clarifies this claim to mean "that Chief Paul and Denise Pouliot or

a Tribal Member be <u>hired</u> as Native American Clergy <u>Under Contract</u>."  (#133 ¶ 3)  The Court does not read RLUIPA to require prisons to hire particular staff at the behest of its inmates.  Cryer has not explained how the DOC policy of recruiting Native American volunteers to assist in services substantially burdens the exercise of his religion.

Otherwise, as noted *supra* note 4, Cryer has not squarely presented a claim in this action challenging the officials' efforts to locate a volunteer; that claim appears to be presented in another pending action before the district court.  For these reasons, the Court recommends granting summary judgment in favor of the defendants on this claim.

### 3. Other federal constitutional claims

Because the Court concludes that summary judgment on Cryer's claims under RLUIPA is warranted, it necessarily follows that summary judgment should enter in favor of the defendants on his claims under the First Amendment.  *See Spratt*, 482 F.3d at 41 n.12 ("'The First Amendment affords less protection to inmates' free exercise rights than does RLUIPA.'") (quoting *Lovelace v. Lee*, 472 F.3d 174, 199-200 (4 Cir., 2006)).

For the reasons stated in this Court's previous report and recommendation, and in the defendants' motion for summary judgment (*see*

#141 at 23-24), the Court also recommends granting summary judgment in favor of the defendants on Cryer's Equal Protection and Eighth Amendment claims. *See Cryer,* 2009 WL 6345768, at **9-10.

## 4. Qualified Immunity

Finally, the Court concludes that the individual defendants are entitled to qualified immunity on the constitutional claims. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The plaintiff bears the burden of establishing that the law concerning each of his claims is "clearly established." *Cortés-Reyes v. Salas-Quintana*, 608 F.3d 41, 52 (1 Cir., 2010). "[A] right is clearly established if a reasonable official is on clear notice that what he or she is doing was unconstitutional." *Id.* (citation omitted).

Cryer identifies no case law holding that the challenged restrictions are unconstitutional under the First, Eighth or Fourteenth Amendments. Instead, he invokes general principles protecting the free exercise of religion. (*See* #150

at 15–16)  As the Court previously noted, "a review of the decisions addressing bans on tobacco smoking and possession in prisons shows that prison officials have enjoyed wide constitutional berth in limiting Native American's access to tobacco." *Cryer,* 763 F. Supp.2d at 252 (collecting cases).  Likewise, Cryer has not identified clearly established law conferring a constitutional right to access a sweat lodge.  *See Fowler,* 534 F.3d at 942 (ban on sweat lodge in maximum security prison does not abridge rights under RLUIPA);  *Farrow,* 2005 WL 2671541, at *13 (collecting cases and noting that "[t]he case law is sufficiently unsettled . . . to conclude that there is no consensus of authority as to a prisoner's right to make use of a sweat lodge") (footnote omitted).  For that reason, the Court recommends granting summary judgment in favor of the defendants in their individual capacities on the alternative ground that they are qualifiedly immune.

## E. State law claims

The Court recommends granting summary judgment in favor of the defendants on the remaining state law claims, substantially for the reasons set out in the defendants' motion for summary judgment.  (*See* #138 at 27-31)  Alternatively, having recommended granting summary judgment on all the federal claims, the Court recommends declining to exercise supplemental

jurisdiction on the remaining state law claims.

## IV. Conclusion

For all the above reasons, I RECOMMEND that Defendants' Motion to Strike Plaintiff's Affidavit and Exhibits Submitted in Support of Opposition to Defendants' Motion for Summary Judgment on Remaining Claims (#137) be DENIED. I FURTHER RECOMMEND that Defendants' Motion for Summary Judgment on the Remaining Claims (#152) be ALLOWED and that Final Judgment enter for the defendants.

## V. Review by the District Judge

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*,

702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603(1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Robert B. Collings

ROBERT B. COLLINGS
United States Magistrate Judge

September 7, 2012.